UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMERIGAS USA, LLC, | § | |
| | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-0072-B |
| | § | |
| STANDARD CAPITAL SA, INC., and | § | |
| DAVID STEPHAN INEZEDY | § | |
| | § | |
|   Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Standard Capital SA, Inc. ("Standard")'s Motion to Compel Arbitration or to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 21) and Defendant David Stephan Inezedy's Motion to Dismiss Case as Frivolous (Doc. 22). For the reasons that follow, the Court **GRANTS** Standard's Motion to Compel Arbitration, **DENIES AS MOOT** Standard's Motion to Dismiss, and **DENIES AS MOOT** Inezedy's Motion to Dismiss.

**I.**

**BACKGROUND**

This is a case about fraud and breach of contract. In November 2019, Plaintiff Amerigas USA, LLC ("Amerigas"), wishing to engage in "spot-buying natural gas, ultra-low Sulphur diesel and other fuels in the European and US markets," initiated a "search for a lender able to provide a Stand By Letter of Credit ("SBLC")" to facilitate the purchases. Doc. 1, Pl.'s Compl., 3. Learning of Amerigas's interest, Standard reached out to Amerigas, representing "that [it] had the expertise and experience to obtain and provide [the] SBLC" Amerigas needed. *Id.*

To establish the relationship, on January 9, 2020, Standard prepared a Letter of Understanding—Use of a Banking Instrument ("LOU") and sent it to Amerigas for execution. *Id.* The LOU indicated that Standard and Amerigas had agreed to work with one another to execute the SBLC and required Amerigas to make a $632,470 escrow payment to Standard. Doc. 23-2, LOU, ¶ 5. The LOU was signed by both parties on January 10, 2020, and Amerigas made the escrow payment on January 14, 2020. *Id.* at 5; Doc. 1, Pl.'s Compl., 4. The LOU did not contain an arbitration clause. *See* Doc. 23-2, LOU.

Standard and Amerigas then negotiated a Private Agreement for the Use of a Bank Instrument ("PA") outlining the details of the SBLC transaction. Doc. 1, Pl.'s Compl., 4. The PA included the following arbitration clause:

> This Agreement contains the entire agreement and understanding concerning the subject matter hereof and supersedes and replaces all prior negotiations and proposed agreements, written or oral . . . . This Agreement shall be interpreted, construed, and governed by the laws of England and Wales . . . . In the event of failure to an amicable settlement, the Parties agree to submit any irreconcilable controversy or claim arising out of or in reference to this Agreement, or breach thereof, which is not able to be settled between the Parties themselves, shall be settled by arbitration in accordance to the laws of England and Wales with hearing to take place in London at a mutually agreed upon time and location.

Doc. 21-1, PA, ¶ 5.17. Amerigas signed the finalized PA on January 30, 2020, and delivered it to Standard. Doc. 1, Pl.'s Compl., 5. The next day, Standard signed the PA on January 31, 2020, but did not notify Amerigas of its signature. *Id.*; Doc. 21-1, PA, 10.

Quickly, the relationship soured. While Standard had assured Amerigas that Standard would issue the SBLC upon the PA's execution and "that Amerigas would receive the SWIFT confirmation of the SBLC from the Royal Bank of Scotland into Hillcrest Bank by January 24, 2020," the SBLC never arrived. Doc. 1, Pl.'s Compl., 4–5. As days passed, Amerigas grew increasingly anxious about

the transaction, yet Standard repeatedly assured Amerigas that the SBLC would soon be delivered. *Id.* at 5–6. A week later, Amerigas "demanded [Standard] return the escrowed money," because the SBLC had still not been delivered, but "[Standard] refused." *Id.* at 5. Amerigas further requested return of the escrowed funds and expressed its intention to repudiate the PA on February 7, 2020; May 22, 2020; and May 28, 2020. *Id.* at 5, 7. The escrowed funds were never returned, nor was the SBLC ever delivered. *Id.* at 8.

Amerigas filed suit against Standard on January 12, 2021, alleging fraud and breach of contract. *Id.* On June 23, 2021, Standard filed a motion to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 3–4, because the PA contained an arbitration clause. Doc. 21, Def.'s Mot. Standard also filed, alternatively, a motion to dismiss for lack of subject matter jurisdiction. *Id.* In response to Standard's motion to compel arbitration, Amerigas alleges that the two parties never entered into the PA because Standard did not sign or deliver the fully executed PA to Amerigas, and, thus, the arbitration clause is unenforceable. Doc. 23, Pl.'s Resp., ¶¶ 27–28. Amerigas also opposes dismissal of claims against Standard and Inezedy. *Id.* at 1. The Court considers each motion below.

## II.

## LEGAL STANDARDS

A.   *Motion to Compel Arbitration Standard*

In enacting the Federal Arbitration Act (FAA), "Congress . . . expressed a strong policy favoring arbitration before litigation." *J.S. & H. Constr. Co. v. Richmond Cnty. Hosp. Auth.*, 473 F.2d 212, 214–15 (5th Cir. 1973). Under the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such

contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Fifth Circuit follows a two-step process to decide whether to compel arbitration: (1) "determine whether the parties agreed to arbitrate the dispute in question," and (2) determine whether any external legal constraints preclude arbitration of the dispute. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam). A party seeking to compel arbitration must prove the existence of an agreement by a preponderance of the evidence. *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012) (per curiam).

Moreover, to determine if evidence in support of a motion to compel arbitration is admissible, courts apply a similar standard as that applied to a motion for summary judgment. *Galitski v. Samsung Telecomm. Am., LLC*, 2013 WL 6330645, at *1 n.1 (N.D. Tex. Dec. 5, 2013). That is, the evidence must comply with the Federal Rules of Evidence and be based on personal knowledge. *Id.*

B.   *Federal Rule of Civil Procedure 12(b)(1)*

"Federal courts are courts of limited jurisdiction." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). For that reason, they can adjudicate claims only when subject-matter jurisdiction "is expressly conferred by the Constitution and federal statute." *Armstrong v. Tygart*, 886 F. Supp. 2d 572, 584 (W.D. Tex. 2012) (citations omitted). "Federal Rule of Civil Procedure 12(b)(1) provides the vehicle through which" a party may challenge federal jurisdiction. *Id.* (citations omitted).

C.   *Federal Rule of Civil Procedure 12(b)(6)*

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To survive a motion to dismiss under 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III.

### ANALYSIS

Standard moves the Court to stay the proceedings and compel arbitration because the PA is a valid and enforceable contract between the parties and contains an arbitration clause. Doc. 21, Def.'s Mot., 1. Amerigas claims that the PA is not a valid contract between the parties because it revoked its offer before Standard had delivered a signed copy of the PA to Amerigas. Doc. 23, Pl.'s Resp., ¶ 4. Below, the Court considers whether the PA is an agreement to arbitrate this claim. Concluding that it is, the Court grants Standard's motion to compel arbitration and dismisses as moot Standard's and Inezedy's motions to dismiss.

A.   *Standard's Motion to Compel Arbitration*

First, the Court must determine whether (1) the parties have a valid agreement to arbitrate and (2) whether the dispute at issue falls within the scope of the agreement. *Webb*, 89 F.3d at 258. If the answer to both of those questions is yes, then the Court must consider whether any external legal constraints foreclose arbitration. *Id.* Here, neither party contends that the dispute falls outside the scope of the alleged arbitration agreement, nor that external legal constraints foreclose arbitration. So, the sole issue is whether there is a valid arbitration agreement between them.

To compel arbitration, a party must prove the existence of an arbitration agreement by a

preponderance of the evidence. *Grant*, 469 F. App'x at 315. And "[i]n determining the contractual validity of an arbitration agreement, courts apply ordinary state-law principles that govern the formation of contracts." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Under Texas law, there is "no presumption in favor of arbitration when determining whether a valid arbitration agreement exists." *Huckaba v. Ref–Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). Rather, the party seeking to compel arbitration must establish that the alleged agreement satisfies the requisite elements of a binding contract. *Id.* And "because the validity of the agreement is a matter of contract, at this stage, the strong federal policy favoring arbitration does not apply." *Id.* at 688–89.

"[A] binding contract requires '(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding.'" *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 n.17 (5th Cir. 2002) (quoting *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio, 1999)). A signature is not required to bind the parties to a contract unless the parties intended to require a signature. *Huckaba*, 892 F.3d at 689.

Here, Standard asserts that it produced evidence showing that the PA is a valid contract and that the PA contains an agreement to arbitrate. Doc. 21, Def.'s Mot., ¶¶ 5–6. To demonstrate the existence of a binding contract, Standard offered documentation of Standard's arbitration policy within the PA. Doc. 21-1, PA, ¶ 5.17. Further, the provided documentation stated: "This Private Agreement for the Use of a Bank Instrument . . . is made and entered into as of the last date signed below . . . by and between the Parties." *Id.* at 1. Standard produced a copy of the PA signed by Amerigas on January 30, 2020, and signed by Standard on January 31, 2020. *Id.* at 10. Additionally,

all fourteen pages of the Private Agreement are initialed by the Borrower/Receiver for Amerigas and the Coordinating Agent for Standard. *See id.* at 10–14.

In response, Amerigas claims that the PA is not enforceable because it was only an offer that Amerigas then revoked before Standard accepted. Doc. 23, Pl.'s Resp., ¶ 2. Amerigas alleges that Standard did not sign or deliver a fully executed PA to Amerigas, thus failing to accept the offer. *Id.* ¶ 9. Amerigas argues that under either the law of Wales and England, or of Texas, "[a]cceptance has no legal effect until it is communicated to the offeror . . . [and] [a]n offer which requires acceptance to be communicated in a specified way can generally be accepted only in that way."[1] *Id.* ¶ 19. Thus, Amerigas contends that because it received no communication of acceptance, specifically, that Standard did not deliver a signed copy of the PA to Amerigas, the agreement never took legal effect. *Id.* ¶ 4.

The Court finds that Standard has established, by a preponderance of the evidence, the existence of an arbitration agreement. First, there is sufficient evidence to show that the parties intended to enter into a contract. The Court finds the case of *Phillips v. Carlton Energy Grp., LLC*, instructive on this point. 475 S.W.3d 265, 277 (Tex. 2015). In *Phillips*, the plaintiff argued that "the lack of evidence that a signed copy was ever delivered to [him] preclude[d] a finding that the parties had a binding agreement." *Id.* at 277. The Texas Supreme Court rejected that argument, stating that a signature and delivery provide evidence of the requisite mutual assent to establish a valid

---

[1] Standard argues that the law of England and Wales applies because the PA includes a choice-of-law provision. Doc. 21-1, PA, ¶ 6. Amerigas argues that Texas contract law applies because the PA was never accepted. Doc. 23, Pl.'s Resp., ¶¶ 3–5. Because the Court finds that the law of Texas and law of Wales and England are identical on this issue, the Court refers to Texas law, but finds that the identical result applies under the law of England and Wales. *Blue v. Ashley* [2017] EWHC 1928 (Comm) [49] (Eng.) (finding the same elements of contract formation as recognized by Texas law).

agreement, but that a signature and delivery are not essential. *Id.* Further, the Court explained, "Texas law recognizes that a contract need not be signed to be 'executed' unless the parties explicitly require signatures as a condition of mutual assent[,]" and that there is a written contract "[i]f a written draft of an agreement is prepared, submitted to both parties, and each of them expresses his unconditional assent thereto." *Id.* (quoting *Mid-Continent Cas. Co. v. Glob. Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010)); *Investec Bank (UK) Ltd v. Zulman* [2010] EWCA (Civ) 536 [16] (Eng.) (reasoning that a signature is only one factor for courts to consider when deciding if the parties intended to be bound by the document, as courts will look at all evidence regarding the parties' intention).

Here, Standard has offered evidence that a written draft of the PA was prepared by both Amerigas and Standard, that Standard gave the draft PA to Amerigas, and that both Amerigas and Standard signed the PA. Doc. 21-1, PA, 10. Regardless of whether Standard delivered its executed copy to Amerigas, both parties clearly intended to contract. Standard reached out to Amerigas to offer its services, entered into the LOU with Amerigas, negotiated the PA with Amerigas, and then sent it to Amerigas. Doc. 1, Pl.'s Compl., 3–4. Amerigas expressed its unconditional assent by negotiating the agreement, paying the $632,470, and executing the agreement by signing and sending it to Standard. *Id.* at 3–5.

Second, the contract stated that it would be effective upon the date of last signing, not delivery. Doc. 21-1, PA, 1. "Under Texas law, contract terms are given their plain, ordinary meaning, considered in light of the contract as a whole, unless the contract itself shows that the parties intended the terms to have a different, technical meaning." *Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 445 (5th Cir. 2018); *West v. Finlay & Assocs.* [2014] EWCA (Civ) 316 [30]

(Eng.) ("The first consideration in any construction exercise is to consider the normal meaning of the words."). Here, the plain language of the PA makes it clear that the PA "is made and entered into as of the last date signed below." Doc. 21-1, PA, 1. There are no terms requiring notice of acceptance. *See id.* Because Amerigas had already signed on January 30, 2020, the contract was effective upon Standard's signature on January 31, 2020. *See id.* at 10. Thus, the Court concludes that there was a valid arbitration agreement between Standard and Amerigas before Amerigas first sought to cancel the agreement on February 6, 2020.

As explained above, because the parties do not dispute that the issue of arbitration falls outside the agreement, the Court finds that this requirement is also met. *See* Doc. 21, Def.'s Mot.; Doc. 23, Pl.'s Resp., ¶ 2. Therefore, the Court concludes that Standard has proven by a preponderance of evidence that the requirements to establish a binding contract were satisfied and that this matter must be compelled to arbitration.

B.   *Standard's Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Alternatively, Standard asks the Court to dismiss this case for lack of subject-matter jurisdiction (Doc. 21). Having decided above that this entire dispute must be compelled to arbitration, the Court may not now adjudicate the merits of Standard's motion to dismiss. Therefore, the Court **DENIES AS MOOT** Standard's motion to dismiss.

C.   *Inezedy's Motion to Dismiss*

Defendant Inezedy separately moves to dismiss the claims asserted against him. Inezedy styles his motion a "Motion to Dismiss Case as Frivolous" and cites no legal authority in support of the motion. *See* Doc. 22, Mot. Dismiss. The Court construes the motion as a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Inezedy's motion states that the claims against him are barred under the LOU executed by Standard and Amerigas. Doc. 22, Mot. Dismiss, ¶¶ 6, 8. The LOU, Inezedy claims, was "duly executed by . . . sophisticated parties" and "unequivocally states [that]: 'Neither Standard, nor its affiliates, respective directors, officers, employees, or agents shall be liable, responsible, or accountable for any damages incurred by Amerigas or its directors, officers, employees, or agents arising from this LOU.'" *Id.* ¶ 5. This language, he asserts, means that he "has no personal liability under any interpretation of the contractual documents." *Id.* ¶ 8. In the alternative, Inezedy argues that the claims against him are barred under the arbitration clause contained in "a superseding document," the PA. *Id.* ¶¶ 3, 7, 8. Amerigas responds that Inezedy's motion should fail because Inezedy fails to adequately support his claim that the fraud and breach of contract claims must be dismissed and that the arbitration argument is addressed in Standard's separate motion on that topic. Doc. 24, Resp. Mot. Dismiss, ¶¶ 3, 5.

Having decided above that this entire dispute must be compelled to arbitration, the Court may not now adjudicate the merits of Amerigas's claims against Inezedy. Therefore, the Court **DENIES AS MOOT** Inezedy's motion to dismiss.

## IV.

## CONCLUSION

For the forgoing reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration (Doc. 21). The Clerk of Court is directed to administratively close the case. Because the Court is compelling the case to arbitration, it no longer has jurisdiction to dismiss the case, and, therefore, the Court **DENIES AS MOOT** Standard's Motion to Dismiss and Inezedy's Motion to Dismiss.

SO ORDERED.

SIGNED: November 1, 2021.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

-11-